# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**MATTHEW STRATIS,**

     **Petitioner,**

**-vs-**                                                    **Case No.  8:16-cv-141-T-36AAS**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

     **Respondent.**

_____/

## <u>ORDER</u>

Petitioner, a Florida prisoner, initiated this action for habeas corpus relief pursuant to 28 U.S.C. Section 2254 (Dkt. 1). Upon consideration of the petition, the Court ordered Respondent to show cause why the relief sought in the petition should not be granted (Dkt. 6). Thereafter, Respondent filed a response (Dkt. 12), to which Petitioner replied (Dkt. 15). After consideration, the petition will be denied.

Petitioner alleges six grounds for relief in his petition:

1. TRIAL COURT VIOLATED PETITIONER'S RIGHTS BY ALLOWING "STEALTHY ENTERED" INSTRUCTIONS OVER DEFENSE'S OBJECTION;

2. TRIAL COURT VIOLATED PETITIONER'S RIGHTS BY ALLOWING WILLIAMS RULE EVIDENCE TO BE PRESENTED;

3. TRIAL COURT ERRED TO GRANT GROUND ONE OF APPELLANT'S MOTION 3.850 COUNSEL WAS INEFFECTIVE [sic];

4. TRIAL COURT ABUSED ITS DISCRETION BY DENYING EVIDENTIARY HEARING ON GROUND TWO;

5. TRIAL COURT VIOLATED PETITIONER'S RIGHTS BY DENYING GROUND FIVE OF APPELLANT'S MOTION 3.850; and

6. TRIAL COURT MADE AN ERROR VIOLATING PETITIONER'S RIGHT BY

DENYING HIS SUPPLEMENT [sic] MOTION.

# I. PROCEDURAL HISTORY

Petitioner was convicted by a jury of burglary (Respondent's Ex. 1, Vol. I, record p. 56 ), and sentenced to 15 years in prison (*Id.*, pp. 59-62). His conviction and sentence were affirmed on appeal (Respondent's Ex. 6).

He filed a motion for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure (Respondent's Ex. 8, Vol. I, record pp. 1-48). All claims in the motion were denied except Ground Two, to which the State was directed to respond (*Id.*, record pp. 49-51). After the State responded to Ground Two (*Id.*, record pp. 77-98), Petitioner filed a supplemental claim to his Rule 3.850 motion (*Id.*, record pp. 99-106). The supplemental claim was denied, and an evidentiary hearing ordered on Ground Two (*Id.*, record pp. 112-21). Following the evidentiary hearing (*Id.*, record pp. 133-52), Ground Two was denied (*Id.*, record pp. 153-213). The denial of the Rule 3.850 motion was affirmed on appeal (Respondent's Ex. 12).

Petitioner filed a motion to correct illegal sentence under Rule 3.800(a), Florida Rules of Criminal Procedure (Respondent's Ex. 16, record pp. 1-11). The motion was denied (*Id.*, record pp. 12-20), and the denial affirmed on appeal (Respondent's Ex. 18).

Petitioner thereafter filed his federal habeas petition in this court (Dkt. 1).

# II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal

habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

## A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the

prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## 2. Ineffective Assistance of Counsel Standard

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland* v. *Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice. Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*.

Petitioner must demonstrate that counsel's alleged errors prejudiced the defense because

"[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691-92. To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted). *See also Cullen v. Pinholster*, 563 U.S. 170, 202 (2011) (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.") (citation omitted).

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

### 3. Exhaustion of State Remedies and Procedural Default

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. *See* § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A state prisoner

"'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845.)

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its' prisoners federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State. . .if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 *U.S.C. § 2254(b)(1); Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal

habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier,* 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

## III. ANALYSIS

### Ground One

Petitioner contends that the state trial court denied him due process and equal protection by giving a jury instruction on "stealthy entry" that was not supported by the evidence. The instruction

he takes issue with stated "You may infer that Matthew Stratis had the intent to commit a crime inside a structure if the entering of the structure was done stealthily and without the consent of the owner or occupant." (Respondent's Ex. 1, Vol. I, record p. 50).

Respondent correctly argues that this claim is procedurally barred (Dkt. 12, p. 16). In his Amended Initial Brief on direct appeal, Petitioner argued that the trial court "committed prejudicial or fundamental reversible error" in giving the instruction on stealthy entry when there was no evidence to support the instruction (Respondent's Ex. 3, pp. 15-22). He cited solely to state cases to support his argument that the facts showed that he did not enter the nail salon by "stealth" as interpreted by Florida law (*Id*.). He did not, however, present the federal constitutional nature of his claim because he did not indicate in any way that he intended to raise a federal due process or equal protection claim (*Id*.).

A petitioner must present each federal claim to a state court before raising the claim in federal court. "A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in state courts." *Henderson*, 353 F.3d at 891 (citation omitted). "The AEDPA requires a state prisoner to exhaust all available state court remedies, either on direct appeal or in a state post-conviction proceeding." *Pearson v. Secretary, Dept. of Corrections*, 273 Fed. Appx. 847, 849 (11th Cir.2008). As *Pearson* notes, federal claims must be presented in a manner that alerts the state court that "the ruling under review violated a federal constitutional right." *Id*. at 849–50. "A state prisoner does not 'fairly present' a claim to a state court if that court must read beyond. . .a brief" to find the federal claim. *Baldwin v. Reese*, 541 U.S. at 32.

As discussed above, Petitioner did not fairly present a federal constitutional claim to the state

appellate court because nothing in his argument in his Amended Initial Brief alerted that court to the presence of a federal claim. The federal claim therefore was not exhausted in state court. Accordingly, this claim is procedurally defaulted because the Florida courts would now refuse to hear his federal constitutional claim.

Because Petitioner shows neither cause and prejudice nor manifest injustice to overcome the procedural default, Ground One is procedurally barred from review.

**Ground Two**

Petitioner contends that the state trial court violated his "rights" by allowing the admission of *Williams* rule evidence.[1] In state court, Petitioner challenged the admission of *Williams* rule evidence in his Amended Initial Brief on direct appeal (Respondent's Ex. 3, pp. 24-28).

Respondent correctly argues that any federal constitutional claim Petitioner now is attempting to raise is procedurally barred (Dkt. 12, p. 19). In his Amended Initial Brief on direct appeal, Petitioner argued that the trial court committed "prejudicial reversible error" and an "abuse of discretion" in allowing the *Williams* rule evidence (Respondent's Ex. 3, pp. 24-28). He cited solely to state case and statutory law to support his argument that the *Williams* rule evidence was improperly admitted (*Id*.). He did not present the federal constitutional nature of his claim because he did not indicate in any way that admission of the *Williams* rule evidence violated his rights under federal law (*Id*.). Accordingly, this claim is procedurally defaulted because the Florida courts would now refuse to hear his federal constitutional claim.

Petitioner shows neither cause and prejudice nor manifest injustice to overcome the procedural default. Ground Two is therefore procedurally barred from review.

---

[1]*Williams v. State*, 110 So.2d 654 (Fla.1959).

**Ground Three**

Petitioner contends that the state post-conviction court erred in denying Ground One of his Rule 3.850 motion. In Ground One of that motion Petitioner alleged that counsel was ineffective during trial in failing to impeach State witness Jamie Christensen with her inconsistent deposition testimony (Respondent's Ex. 8, Vol. I, pp. 3-4). Specifically, Petitioner asserted that Christensen testified at trial that Petitioner had told her that his name was Matthew Sigman, and that the police had not mentioned the name Matthew Sigman to her while they questioned her. He contended that this testimony was inconsistent with Christensen's deposition testimony that the police were "harassing" her and "asking questions about Matthew Sigman."

In denying this claim, the state post-conviction court stated:

> Defendant argues that his counsel was ineffective for failing to impeach Jamie Christensen, a state witness. Specifically, Defendant contends that Ms. Christensen's trial testimony and deposition testimony are inconsistent on the issues of police interrogation and Defendant's name and, thus, that the deposition testimony could have been used to impeach the witness. This Court disagrees that the trial testimony and deposition testimony are inconsistent. In both proceedings, Ms. Christensen stated that the police interrogated her regarding Matthew Sigman. *(Ex. B. Trial Tr. at 124:14-125:24; Ex. C: Deposition Tr. of Jamie Christensen at 4:20-5:3.)* Further, even if the testimony on this fact was inconsistent, there is no reasonable probability that impeachment of the witness on this minor fact would have changed the outcome at trial. Thus, this ground of Defendant's motion is denied.

(Respondent's Ex. 8, Vol. I, pp. 1-2).

The trial and deposition transcripts support the state post-conviction court's finding that Christensen's trial testimony was not inconsistent with her deposition testimony. During her deposition Christensen testified, in pertinent part, that:

> I flagged down a police officer and the next thing I know I heard the officer get on the radio, describe my car. The next thing I know, I got swarmed by like five detectives. They like surrounded me my car and me and started like harassing me, asking questions about Matthew Sigman, or Stratis I guess his AKA is.

(Respondent's Ex. 8, Vol. I, record pp. 68-69).  At trial, the following exchange took place between defense counsel and Christensen:

Q Okay. And when you first met with law enforcement and discussed this, that was in a parking lot at a shopping center, wasn't it?

A Yes.

Q And you were presented with a picture of Mr. Stratis, weren't you?

A Not at the parking lot. When I was back at the police station, they did present pictures to me.

Q And that was -- it was made -- that was a driver's license photo?

A Yes.

Q And you knew that was Matthew Stratis?

A Yes.

Q Whom you knew as "Ziggy?"

A Yes.

Q All right. And that's the only name that was brought up to you; is that correct?

A It was actually Matthew Sigmand (phonetic).

Q Okay. Matthew Sigman?

A Yes.

* * *

Q So, just to -- one more question on the Q Nails.  You said a wallet was taken?

A Yes.

Q Okay. And the name Matthew Sigman, that was a name that was mentioned to you

on the day that the police questioned you?

A No, he had told me his name -

Q Okay.

A -- was Matthew Sigman.

Q All right.

A But I -- we always -- everybody called him Ziggy.

Q Okay. And isn't it a fact that you had told the police that you had known him for about two weeks?

A Yes.

(Respondent's Ex. 1, Vol. II, transcript pp. 124-25).

The state post-conviction court correctly found that during both trial and her deposition, Christensen consistently testified that police had interrogated her regarding Petitioner. At trial she did not deny that the police asked her about Petitioner. Rather, she answered "Yes" when asked whether Petitioner's name had been "brought up" to her. And she testified that the police showed her a picture of Petitioner. When she testified that Petitioner had told her that his name was Matthew Sigman after she was asked whether "the name Matthew Sigman. . .was a name that was mentioned to [her] on the day that the police questioned [her]," she was not stating that the police never interrogated her regarding Petitioner. Rather, she appears to have been clarifying that she first learned the name Matthew Sigman from Petitioner rather than the police. Accordingly, counsel was not ineffective in failing to impeach Christensen on this issue because her trial testimony was not inconsistent with her deposition testimony.

Petitioner has failed to demonstrate that the state courts' denial of this claim was an

unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Accordingly, Ground Three does not warrant federal habeas relief.

**Ground Four**

Petitioner alleges that the state post-conviction court "abused its discretion" in denying Ground Two of his Rule 3.850 motion. In Ground Two of that motion Petitioner alleged that Christensen testified for the State because she feared negative consequences if she did not do so (Respondent's Ex. 8, Vol. I, pp. 5-6). In particular, he alleged that the police officers threatened to prosecute Christensen if she failed to cooperate with them (*Id*.). Petitioner claims that trial counsel was ineffective in failing to cross-examine Christensen concerning this motive for testifying.

Following an evidentiary hearing, the state post-conviction court denied this claim:

> Defendant argues that his counsel was ineffective for failing to impeach a witness, Ms. Jamie Christensen, by revealing evidence of bias. Specifically, Defendant claims that Ms. Christensen was threatened with criminal charges if she did not assist law enforcement. (See Exhibit B: Deposition Tr. of Jamie Christensen at 11:17-23). Defendant argues that counsel should have brought out these facts on cross examination. Morrell v. State, 297 So. 2d 579, 580 (Fla. 1st DCA 1974). Defendant goes on to argue that had Ms. Christensen's possible motive or self-interest been exposed, that the outcome of trial would have been different. In its response, the State argues that Defendant's counsel was not deficient as Ms. Christensen was impeached on other grounds and that even if Ms. Christensen's bias had been revealed, the outcome of trial would not have been different because of the overwhelming evidence presented at trial. The State also argues that the decision not to bring out these facts on cross-examination was a part of a reasonable trial strategy, and that counsel was not ineffective for his strategic decision.

### 3.850 Evidentiary Hearing Testimony

**Defendant, Matthew Stratis**

> Defendant testified that he was dissatisfied that trial counsel did not impeach Ms. Christensen regarding the threat from law enforcement regarding criminal charges if she did not assist law enforcement. (See Exhibit C: April 26, 2013 Motion Hearing Tr. At 6:8-11). Defendant testified that after Ms. Christensen was deposed he had asked counsel to have the deposition transcribed, but he did not have a chance

to review the transcript prior to trial because it was not transcribed prior to trial. Id. at 6:12-21. Defendant testified that his family paid to have the deposition transcribed in June 2012. Id. at 6:22-7:5. Defendant further testified that he felt prejudiced that Ms. Christensen was not impeached at trial. Id. at 7:7-9.

**Trial Counsel, Richard Watts**

Defendant's trial counsel, Attorney Richard Watts also testified at the evidentiary hearing. He testified that he has been practicing as an attorney for 32 years and represented Defendant at his trial on August 3, 2010. Id. at 8:16-23. He testified that Ms. Christensen was deposed in this case and later testified at trial, and that she indicated that she was present when the crime was committed but that she did not participate. Id. at 9:8-12. Attorney Watts testified that during the deposition, Ms. Christensen did make a comment about the reason she assisted police being that she was threatened or forced. Id. at 9:16-20. He testified that at trial, the theme of his examination of Ms. Christensen was to establish that she willingly cooperated with law enforcement and had a motive for doing so. Id. at 10:16-20. He testified that the theory of defense at trial was that Ms. Christensen had participated as a lookout or ride-along in the burglary with some third person that she was protecting by naming Defendant as the participant, and that she was happy to point out Defendant as the burglar. Id. at 11:5-13. He further testified that he presented evidence to support the defense's contention that Defendant was somewhere else at the time of the crime, and that Ms. Christensen was helping to frame Defendant as a participant to protect some third person that had actually committed the burglary. Id. at 11:1419. Attorney Watts testified that it was a strategic decision not to ask Ms. Christensen about her being forced to cooperate. Id. at 11:20-22.

On cross-examination, Attorney Watts testified that he did recall Ms. Christensen mentioning during the deposition that she was threatened with criminal charges if she did not assist law enforcement, and that he chose not to impeach her on that during cross-examination at trial because the theory of defense was that she was happy to cooperate with law enforcement and point the finger at Defendant because she was protecting the real burglar. Id. at 12:19-13:5.

**Case Law**

In a motion for postconviction relief, "[t]he defendant bears the burden of establishing a prima facie case based upon a legally valid claim." Griffin v. State, 866 So. 2d 1, 9 (Fla. 2003); State v. Young, 932 So. 2d 1278, 1282-83 (Fla. 2d DCA 2006) (holding this burden "cannot be overcome by mere speculation"). As such, the defendant must allege specific facts entitling him to relief. Griffin, 866 So. 2d at 9 (holding that "mere conclusory allegations" were insufficient in a postconviction motion).

When alleging ineffective assistance of counsel, a defendant must prove that (1) counsel's performance was deficient; and (2) that such deficient performance caused the defendant to suffer prejudice. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). To satisfy the first prong, the defendant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. To satisfy the prejudice test, the defendant must show a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. See Haliburton v. Singletary, 691 So. 2d 466, 470 (Fla. 1997); Rutherford v. State, 727 So. 2d 216 (Fla. 1998). In the event that the defendant fails to satisfy one component, the inquiry ends, and the reviewing court need not determine if the defendant has satisfied the other. See Maxwell v. Wainwright, 490 So. 2d 927 (Fla. 1986).

The evaluation of an attorney's performance at trial level requires a consideration of all the circumstances from the attorney's perspective at that time. See Downs v. State, 453 So. 2d 1 102, 1 106-07 (Fla. 1984). The legal standard for such an evaluation is "reasonably effective counsel, not perfect or error-free counsel." See Tuffeteller v. Digger, 734 So. 2d 1009, 1022 n.14 (Fla. 1999). Strategic decisions do not constitute ineffective assistance of counsel. See Occhicone v. State, 768 So. 2d 1037, 1048 (Fla. 2000); see also Lemarca v. State, 931 So. 2d 838, 848 (Fla. 2006) (holding that reasonable trial strategy is not subject to collateral attack in a motion for postconviction relief). There is a strong presumption of reasonableness that must be overcome with any given ineffectiveness claim. Downs, 453 So. 2d at 1108.

**Findings**

After considering the testimony presented during the evidentiary hearing, this Court finds that Defendant has failed to establish either prong of the Strickland test. Defense counsel made a strategic decision not to impeach Ms. Christensen with her prior deposition testimony, as this would have contradicted the primary theory of defense. The State points out, and this Court agrees, that there was a clear defense strategy throughout the trial that Defendant was somewhere else when this crime was committed and that Ms. Christensen was more than willing to point to Defendant, whom she barely knew, as the burglar in order to protect the identity of the real burglar. Defense counsel first introduced the alibi theory of defense during the opening statement. (See Exhibit D: Trial Tr. at 99:14-100:21). On cross-examination of Ms. Christensen, defense counsel elicited testimony that she had told police that she had only known Defendant for about two weeks. Id. at 125:22-24. Defense counsel followed up with this on cross-examination of Detective Vail, eliciting testimony that Ms. Christensen told Detective Vail that she had met Defendant approximately two weeks prior to February 6, 2009, when she met with the detective. Id. at 137:13-20. Defense counsel called Defendant's paramour, Heather Cuddington, as an alibi witness. Ms. Cuddington testified that Defendant was home with her the

15

entire night that the burglary occurred. Id. at 182:3-183:17, 202:16-20. Counsel again reiterated this strategy during closing argument, arguing that Ms. Christensen jumped on blaming Defendant for the burglary when presented with his name by the police because she did not want to give up the naine of the person who really committed the crime, a person she may have known very well. Id. at 213:12-214:5. Counsel goes on to argue that Defendant was with his paramour at the time the burglary took place. Id. at 215:4-8.

Eliciting testimony that Ms. Christensen testified against Defendant due to threats of criminal prosecution if she refused to do so would have directly contradicted defense counsel's theory that Ms. Christensen willingly pointed out Defendant, a man she had known for about two weeks, as the burglar for the purpose of protecting the true perpetrator. Therefore, this was a reasonable strategic decision not subject to collateral attack, and does not constitute a deficiency on the part of counsel. See Lemarca, 931 So. 2d at 848; see Beasley v. State, 18 So. 3d 473 (Fla. 2009) ("strategic decisions do not constitute ineffective assistance or counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct") (citing Occhicone, 768 So. 2d at 1048)).

Moreover, Defendant has failed to demonstrate prejudice sufficient to call into question the outcome of his jury trial. Jones v. State, 998 So. 2d 573, 584 (Fla. 2008) ("the defendant must demonstrate how, if counsel had acted otherwise, a reasonable probability exists that the outcome would have been different-that is, a probability sufficient to undermine confidence in the outcome") (citing Holland v. State, 916 So. 2d 750 (Fla. 2005))). The assertion that Defendant felt prejudiced by counsel's failure to impeach Ms. Christensen with her prior deposition testimony, and that such impeachment would have resulted in a not guilty verdict by casting doubt on Ms. Christensen's credibility, is not sufficient to show a reasonable probability that the outcome of the proceeding would have been different, especially in light of the totality of the evidence presented by the State.

As the State points out, had Ms. Christensen's deposition statement that if she "helped [law enforcement] to the best [she] could, they would make sure [she] wasn't going to get into any trouble for it" been presented to the jury, it is entirely reasonable for the jury to have concluded that the threat of criminal charges would only be removed if she was truthful in identifying the perpetrator. (See Exhibit B at 11:19-23; see Exhibit C at 16:8-15). In addition to being contradictory to the defense's stated trial strategy, this would have served to bolster Ms. Christensen's testimony in the eyes of the jury.

Furthermore, the State presented Williams Rule evidence for the purpose of proving identity, plan and intent on the part of Defendant regarding- another burglary which was committed by Defendant in nearly the exact same manner as the instant

burglary. Deputy Jose Camacho testified that on August 6, 2008, he was conducting surveillance of a hair salon located in a shopping plaza at approximately 3:50 a.m. when he observed Defendant approach the salon and smash the full glass front door of the business. (See Exhibit D at 143:13-146:11). The deputy observed Defendant enter the salon through the shattered glass door and then observed him exiting the salon wearing a pair of gloves and carrying a crowbar, at which point the deputy arrested him for burglary. Id. at 146:21-147:14. In addition to showing identity, plan, and intent, this evidence also serves to corroborate Ms. Christensen's testimony, as it virtually mirrors the factual circumstances of the burglary in this case as described by Ms. Christensen. Ms. Christensen's testimony was further corroborated by the testimony of Defendant's mother; Ms. Christensen had testified that Defendant was driving his mother's silver Kia on the night of the burglary. Id. at 117:14-1 18:11. Defendant's mother later took the stand and testified that she did indeed own a silver Kia, and that Defendant would occasionally drive that car. Id. at 173:17175:11. In light of this corroboration, as well as the striking similarity of the Williams Rule evidence to the instant crime, it is unlikely that a further attack on Ms. Christensen's credibility by impeaching her with her prior deposition testimony would have changed the outcome of the proceeding.

Based on the foregoing, Defendant has not shown a reasonable probability that, but for counsel's failing to impeach Ms. Christensen with her deposition statements, the outcome of the proceedings would have been different. Because Defendant fails to establish that counsel was deficient or resulting prejudice, this claim is denied.

(Respondent's Ex. 8, Vol. I, record pp. 154-59) (footnote omitted).

The state post-conviction court properly denied this claim as there was no evidence of deficient performance by Attorney Watts. At the evidentiary hearing, Watts testified that his trial strategy was to show that Christensen had participated in the burglary as a lookout for a third person, and that she attempted to protect that third person by readily identifying Petitioner, whom she only recently had met (*Id.*, record pp. 141-43, 145). Watts further testified that although Christensen had stated during her deposition that she cooperated with police because she was "threatened or forced," he made a tactical decision to not ask her about being forced to cooperate with the police (*Id.*).

Petitioner's claim boils down to one of disagreement with trial counsel's choice as to strategy. However,

> [a] claimant is not entitled to relief if the claim of ineffectiveness merely expresses disagreement with counsel's strategy. [ ] Counsel's strategic decisions will not be second-guessed on collateral attack. [ ] Strategic decisions do not constitute ineffective assistance if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct. [ ]

*Jones v. Secretary, Dept. of Corr.*, 2011 WL 5420816, at *7 (M.D. Fla. Nov. 9, 2011) (unpublished). Petitioner has the burden of proving that counsel's approach "would have been used by no professionally competent counsel." *Id.* at *8 (quoting *State v. Williams*, 797 So. 2d 1235, 1239 (Fla. 2001)); *Darling v. State*, 966 So. 2d 366, 382 (Fla. 2007). The relevant question is not whether counsel's choices were strategic, but whether they were reasonable. *Putman v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000)).

Counsel's decision to not question Christensen regarding whether she cooperated with police because she was threatened by them and instead attempt to show that she willingly cooperated with police and identified Petitioner to protect the actual perpetrator was a reasonable strategic decision. Counsel therefore cannot be deemed ineffective. Watts contemplated alternative courses, but decided it was better to focus on the theory of defense that Petitioner was at home with Heather Cuddington at the time of the offense, and Christensen was protecting the real perpetrator by readily identifying Petitioner. *See Graham v. Florida Atty. Gen.*, 2014 WL 2118877, at *5 (M.D. Fla. May 20, 2014) ("Perhaps defendant's post-conviction counsel would have tried the defendant's case differently, and perhaps he would have done more to impeach [the witness]. Perhaps five other criminal defense attorneys would have had five different trial strategies. That does not make any one of them ineffective under *Strickland*. . . .").

The Court has examined the record in Petitioner's case and finds that it supports the trial court's factual findings and the reasonableness of its legal conclusion. Based upon this record,

Petitioner fails to show that his attorney's alleged deficiency rendered the result of his trial unfair or unreliable. *Jones*, 2011 WL 5420816, at *8; *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (The prejudice component of *Strickland* focuses on the question of whether "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.").

The state courts' decisions with regard to this claim were neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Ground Four does not warrant federal habeas relief.

**Ground Five**

Petitioner contends that the state post-conviction court erred in denying Ground Five of his Rule 3.850 motion. In Ground Five of that motion Petitioner alleged that counsel was ineffective in failing to have a transcript of Christensen's deposition available for trial (Respondent's Ex. 8, Vol. I, p. 12). He asserted that counsel should have used the transcript to impeach Christensen with an inconsistent statement and her motive for testifying.

In denying this claim, the state post-conviction court stated:

> Defendant claims that his counsel was ineffective for failing to transcribe the deposition of Ms. Christensen. Given that defense counsel made no attempt to impeach Ms. Christensen based on the contents of her deposition, this ground is denied as Defendant was not prejudiced by the lack of a transcribed deposition.

(Respondent's Ex. 8, Vol. I, record p. 51).

Petitioner argues that the state post-conviction court's denial of this claim was based on "an unreasonable determination of the facts presented. . . ." (Dkt. 1, docket p. 12). The Court disagrees. Counsel did not attempt to impeach Christensen with her deposition testimony (Respondent's Ex. 1, Vol. II, transcript pp. 123-26). Accordingly, counsel was not ineffective in failing to have a transcript of Christensen's deposition because her deposition testimony was not used to impeach her

at trial.

To the extent Petitioner is again asserting that counsel was ineffective in failing to impeach Christensen with an inconsistent statement in her deposition and her motive for testifying against him, the claim fails for the same reasons discussed in Grounds Three and Four above.

Petitioner has failed to demonstrate that the state courts' denial of this claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Accordingly, Ground Five does not warrant federal habeas relief.

**Ground Six**

Petitioner contends that the state post-conviction court erred in denying his supplemental claim to his Rule 3.850 motion. In that claim Petitioner alleged that Section 775.261, Florida Statutes, which requires a "career offender" to register as a "career offender" with the Florida Department of Law Enforcement, was unconstitutional as applied to him (Respondent's Ex. 8, Vol. I, record pp. 99-106). He asserted that because he was designated a "violent career criminal" at sentencing under Section 775.084, Florida Statutes, he also was a "career offender" under Section 775.261(2)(a).[2] He argued that the purpose of Section 775.261 is to alert citizens of individuals who are violent repeat offenders, and that it was unreasonable to apply the statute to him because his conviction for third-degree burglary was not a violent crime. He clarified that he was not challenging his sentence, but rather was requesting that his "designation" as a violent career criminal be "removed" to avoid having to register as a career offender under Section 775.261.

In denying this claim, the state post-conviction court stated:

---

[2]Section 775.261(2)(a) provides that a "'Career offender' means any person who is designated as a habitual violent felony offender, a *violent career criminal*, or a three-time violent felony offender under s. 775.084 or as a prison releasee reoffender under s. 775.082(9)." (emphasis added).

. . .Defendant argues that his designation as a Violent Career Criminal, ("VCC"), is unconstitutional. Specifically, Defendant argues that section 775.084(4)(d), Florida Statutes, cannot be constitutionally applied to this case because the felony he was convicted of did not contain any violent element. This ground must be denied as it is without merit. As stated above, Defendant was convicted of burglary. Burglary is a forcible felony for which a defendant can be sentenced as a VCC. Curi v. State, 36 So. 3d 853 (Fla. 3d DCA 2010). This is true even if the burglary is of an unoccupied structure. Id. Thus, Defendant's Supplemental motion is denied.

(Respondent's Ex. 8, Vol. I, record p. 113).

To the extent Petitioner is challenging whether he met the criteria under Florida law for designation as a violent career criminal, Ground Six warrants no federal habeas relief because the claim asserts no federal constitutional claim. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

To the extent he asserts in his federal habeas petition that his designation as a violent career criminal violates his rights to due process and to equal protection under the United States Constitution, the claim is unexhausted because Petitioner failed to argue a federal constitutional violation when he presented this claim in his supplement to his Rule 3.850 motion and his Initial Brief on appeal (Respondent's Ex. 8, Vol. I, record pp. 99-106; Ex. 9, pp. 11-13). His vague and cursory references to "due process" and "equal protection" in both his motion and Initial Brief did not fairly present to the state courts the federal nature of his claim. *See Zeigler v. Crosby*, 345 F.3d 1300, 1308 n. 5 (11th Cir. 2003) (finding petitioner failed to exhaust federal nature of his claim because his appellate brief which contained the words "Appellant was denied due process and a fair trial" could be interpreted as asserting a fair trial claim under due process clause of Florida Constitution). State procedural rules preclude Petitioner's returning to state court to present his

federal claims and render this claim procedurally defaulted.

Petitioner fails to demonstrate cause and prejudice excusing his default. His failure to proffer specific facts showing an exception to procedural default renders this claim procedurally barred from federal review.

Even if the claim were not procedurally barred, it would fail on the merits. Petitioner essentially contends that his designation as a violent career criminal is unconstitutional because that designation also makes him a "career offender" under Section 775.261, and career offenders are required to register with the Florida Department of Law Enforcement and subject to public notification of their status as a career offender. He argues that the mandatory registration requirement of the statute is unconstitutional as applied to him because the statute "was created to inform the public of certain violent repeat offenders" (*see* Respondent's Ex. 9, p. 12), and the offense for which he was convicted, burglary in the third-degree, involved no violence.

Section 775.261 is constitutional as applied to Petitioner. The statute is reviewed under the rational basis standard because "a state's publication of truthful information that is already available to the public does not infringe the fundamental constitutional rights of liberty and privacy." *Doe v. Moore*, 410 F.3d 1337, 1345 (11th Cir. 2005). To survive review under this standard, the registration requirement has to be rationally related to a legitimate government interest. *Id*.

Florida has a legitimate interest in protecting the public from criminal conduct. *See id.*, ("It has long been in the interest of government to protect its citizens from criminal activity. . . ."). Petitioner argues that the purpose of the statute is to warn the public of "violent offenders," and his burglary conviction involved no violence. He does not, however, support his argument with any law. Section 775.26, Florida Statues, provides:

The Legislature finds that certain career offenders, by virtue of their histories of offenses, present a threat to the public and to communities. The Legislature finds that requiring these career offenders to register for the purpose of tracking these career offenders and that providing for notifying the public and a community of the presence of a career offender are important aids to law enforcement agencies, the public, and communities if a career offender engages again in criminal conduct. Registration is intended to aid law enforcement agencies in timely apprehending a career offender. Registration is not a punishment, but merely a status. Notification to the public and communities of the presence of a career offender aids the public and communities in avoiding being victimized by a career offender. The Legislature intends to require the registration of career offenders and to authorize law enforcement agencies to notify the public and communities of the presence of a career offender.

Nothing in the statute indicates that the Florida Legislature's intent was to limit the registration requirement solely to offenders who have a history of committing "violent" offenses. Burglary is a "forcible felony" under Florida law, *see* Section 776.08, Florida Statutes, and for purposes of designating a defendant as a violent career criminal the statute provides, in pertinent part, that qualifying offenses include "[a]ny forcible felony, as described in s. 776.08." Section 775.084(1)(d)1.a., Florida Statutes (2018). Florida has a legitimate interest in protecting the public from individuals with a history of committing multiple burglaries.[3]

Section 775.261 is rationally related to protecting the public from criminal conduct because requiring certain repeat offenders to register with the Department of Law Enforcement allows law enforcement to track these individuals and notify the public of repeat offenders in their community. Accordingly, Petitioner has failed to demonstrate that the state appellate court's denial of this claim was contrary to or an unreasonable application of clearly established federal, or was based on an

---

[3]Petitioner's Criminal Punishment Code Scoresheet indicates that at the time of sentencing, he had seventeen (17) prior convictions for burglary (Respondent's Ex. 1, Vol. I, record p. 57).

unreasonable determination of the facts.[4]  Ground Six therefore does not warrant federal habeas relief.

Any of Petitioner's allegations not specifically addressed in this Order have been determined to be without merit.

It is therefore **ORDERED AND ADJUDGED** that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.  The **Clerk** is directed to enter judgment accordingly and close this case.

2. A Certificate of Appealability (COA) is **DENIED** in this case, since Petitioner cannot make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  And because Petitioner is not entitled to a COA, he is not entitled to proceed on appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida on March 25, 2018.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to: Petitioner *pro se*; Counsel of Record

---

[4]Petitioner raised this claim on appeal from the denial of his Rule 3.850 motion (Respondent's Ex. 9), and the appellate court per curiam affirmed without issuing a written opinion (Respondent's Ex. 12).  Accordingly, there is a qualifying decision from the state appellate court to which this court must apply AEDPA deference.  *See Harrington v. Richter*, 562 U.S. 86, 99 (2011) (Regardless of whether the last state court provided an opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").